Christopher B. Adamson, Esq. (State Bar No. 238500)
christopher@aa-llp.com
Alan A. Ahdoot, Esq. (State Bar No. 238594)
alan@aa-llp.com
Federico C. Sayre, Esq. (State Bar No. 67420)
federico@aa-llp.com
**ADAMSON AHDOOT LLP**
1150 S. Robertson Blvd.
Los Angeles, California 90035
T: 310.888.0024
F: 888.895.4665
Attorneys for Plaintiffs
E.J.M., and A.E.M., minors, by and through their Guardian Ad Litem, Janet F. Garcia, Joanna L. Garcia, an individual, and Edgar Matos, an individual.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| E.J.M. and A.E.M., minors, individually, and as successors in interest to EDUARD JESSE MATOS, by and through their Guardian Ad Litem, Janet F. Garcia, Joanna L. Garcia, an individual, and Edgar Matos, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>LOS ANGELES COUNTY, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; JIM McDONNELL, an individual; ALEX VILLANUEVA, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **VIOLATION OF FEDERAL CIVIL RIGHTS [42 U.S.C. §§ 1983, 1985, 1986, 1988];**<br>2. **VIOLATION OF FEDERAL CIVIL RIGHTS: MONELL CLAIM [42 U.S.C. §§ 1983, 1985, 1986, 1988]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs EDGAR MATOS, JOANNA L. GARCIA, and E.J.M. and A.E.M., minors, by and through their Guardian Ad Litem JANET F. GARCIA, individually (hereinafter "Plaintiffs"), bring this civil rights action on behalf of EDUARD JESSE MATOS as follows:

## INTRODUCTION

1.     Plaintiffs seek judgement against Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Jim McDonnell, Alex Villanueva, and DOES 1-100 (collectively "Defendants") for the violation of the civil rights of their father and son, EDUARD MATOS (hereinafter "Decedent" and/or "Mr. Matos") by officers and employees of the Los Angeles County Sheriff's Department on July 4, 2018 in the city of La Puente, California.

2.     It is herein alleged that DEFENDANTS violated the civil rights of Mr. Matos, an unarmed Mexican American male, by placing such pressure on his body that he asphyxiated and suffered a cardiac arrest.

## THE PARTIES

3.     At all times herein mentioned, PLAINTIFFS were, and are, individuals residing in the County of Los Angeles, State of California.  Plaintiffs E.J.M. and A.E.M., bring this lawsuit as DECEDENT'S only surviving children under Code of Civil Procedure section 377.60, subd.(a), and as his successors in interest under Code of Civil Procedure section 377.30.

4.     At all times mentioned herein, Plaintiff Joanna L. Garcia was residing in the County of Los Angeles, State of California.

5.     Plaintiff Edgar Matos was residing in County of Los Angeles, State of California.

6.     Plaintiffs E.J.M. and A.E.M. appear by and through their Guardian ad Litem, their mother, Janet F. Garcia, a resident of the County of Los Angeles, State of California. Plaintiffs E.J.M. and A.E.M.'s mother, Janet F. Garcia will be appointed Guardian ad Litem at the time this Complaint is filed.

7.     Upon information and belief, defendant, County of Los Angeles ("County"), is and was, at all times relevant to the matters alleged in this complaint, a county entity organized under the laws of the State of California and the public employer of the police officers named as defendants in this action.

8.     Upon information and belief, defendant, Los Angeles County Sheriff's Department ("Sheriff's Department"), is and was, at all times relevant herein to the matters alleged in this complaint, a separate department of Defendant County, organized under the law of the State of California.

9.     Upon information and belief, defendant, Jim McDonnell ("McDonnell"), was at all times relevant to the matters alleged in this complaint, the sheriff of Defendant Los Angeles County Sheriff's Department. Defendant McDonnell was the head policy maker of the Los Angeles County Sheriff's Department. Shortly after this incident, Defendant Alex Villanueva ("Villanueva") became the sheriff of Los Angeles County, and as sheriff of Los Angeles County Sheriff's Department, is now the head policy maker of the Los Angeles County Sheriff's Department and should have been involved with meting out punishment to the individual officers involved in this incident.

10.     In addition to the facts alleged in the following paragraphs, the following Defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and/or the County of Los Angeles:  Defendant McDonnell, at all times relevant herein, was the sheriff of the County of Los Angeles.  In addition to being sued in his official capacity, Defendant McDonnell is sued in his personal capacity to the extent his actions under color of state law, caused deprivations of Plaintiffs' and Mr. Matos's federal civil rights.  On information and belief, Plaintiffs' believe Defendant McDonnell, was the sheriff

of the County of Los Angeles who set forth polices and customs based on a person's racial characteristics, specifically policies and customs encouraging racism against Mexican Americans by the officers and employees. Plaintiffs' further believe Defendant McDonnell encouraged officers and employees below him to engage in acts against Mexican Americans. In addition, Plaintiffs' believe Defendant Villanueva as the successor in interest to Defendant McDonnell failed to punish the actions of individual sheriff deputies who violated the civil right of Eduard Jesse Matos and all the Plaintiffs. Defendant Villanueva's failure to impose proper punishment against the culpable officers was in itself a violation of Plaintiffs' civil rights.

11.   In addition to the facts alleged in the following paragraphs, the following Defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and/or the County of Los Angeles:  Defendant McDonnell, at all times relevant herein, was the sheriff of the County of Los Angeles.  In addition to being sued in his official capacity, Defendant McDonnell is sued in his personal capacity to the extent his actions under color of state law, caused deprivations of Plaintiffs' and Mr. Matos's federal civil rights and the civil rights of Plaintiffs Joanna Garcia and Edgar Matos, the parents of Mr. Matos.  On information and belief, Plaintiffs' believe Defendant McDonnell was the sheriff of the County of Los Angeles who set forth polices and customs based on a person's racial characteristics, specifically policies and customs encouraging racism against Mexican Americans by the officers and employees. Plaintiffs' further believe Officer McDonnell encouraged officers and employees below him to engage in acts against Mexican Americans. In addition, Plaintiffs' believe Defendant Villanueva as the successor in interest to Defendant McDonnell failed to punish the actions of individual sheriff deputies who

violated the civil rights of the Plaintiffs. Defendant Villanueva failure to impose proper punishment against the culpable officers was in itself a violation of Plaintiffs' civil rights.

12.    In addition to the facts alleged in the following paragraphs, the following Defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and/or the County of Los Angeles:  Defendant McDonnell, at all times relevant herein, was the sheriff of the County of Los Angeles.  In addition to being sued in his official capacity, Defendant McDonnell is sued in his personal capacity to the extent his actions under color of state law, caused deprivations of Plaintiffs' and Mr. Matos's federal civil rights and the civil rights of Plaintiffs Joanna Garcia and Edgar Matos, the parents of Mr. Matos.  On information and belief, Plaintiffs' believe Defendant McDonnell was the sheriff of the County of Los Angeles who set forth polices and customs based on a person's racial characteristics, specifically policies and customs encouraging racism against Mexican Americans by the officers and employees. Plaintiffs' further believe Sheriff McDonnell encouraged officers and employees below him to engage in acts against Mexican Americans. In addition, Plaintiffs' believe Defendant Villanueva as the successor in interest to Defendant McDonnell failed to punish the actions of individual sheriff deputies who violated the civil rights of the Plaintiffs. Defendant Villanueva failure to impose proper punishment against the culpable officers was in itself a violation of Plaintiffs' civil rights.

13.    In addition to the facts alleged in the following paragraphs, the following Defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and

usages of the State of California and/or the County of Los Angeles:  Defendant McDonnell, at all times relevant herein, was the sheriff of the County of Los Angeles.  In addition to being sued in his official capacity, Defendant McDonnell is sued in his personal capacity to the extent his actions under color of state law, caused deprivations of Plaintiffs' and Mr. Matos's federal civil rights and the civil rights of Plaintiffs Joanna Garcia and Edgar Matos, the parents of Mr. Matos.  On information and belief, Plaintiffs believe Defendant McDonnell was the sheriff of the County of Los Angeles who set forth polices and customs based on a person's racial characteristics, specifically policies and customs encouraging racism against Mexican Americans by the officers and employees. Plaintiffs' further believe Officer McDonnell encouraged officers and employees below him to engage in acts against Mexican Americans. In addition, Plaintiffs' believe Defendant Villanueva as the successor in interest to Defendant McDonnell failed to punish the actions of individual sheriff deputies who violated the civil rights of the Plaintiffs. Defendant Villanueva failure to impose proper punishment against the culpable officers was in itself a violation of Plaintiffs' civil rights.

## **FACTS COMMON TO ALL COUNTS**

14.    On July 4, 2018, at approximately 3:00pm Eduard Matos "Matos" was attempting to visit his children at the home of their mother Janet Garcia in the City of La Puente, County of Los Angeles, California. At that time and place, a verbal argument ensued between Joanna Garcia and Edward Matos who are the mother and father of the minor plaintiffs in this case.

15.    In response to this verbal altercation, sheriffs' deputies were called to the home of Joanna Garcia. Mr. Matos became frightened of the police who responded to the call and fled across rooftops away from that location. Mr. Matos was not armed. Mr. Matos arrived at the rooftop located at 631 La Seda, La Puente, County of Los Angeles. At that time, many sheriff deputies had

arrived and Mr. Matos either slipped or was pulled down from the roof. Once Mr. Matos was on the ground, in a prone position, at least four officers put their weight on his back for at least 10 minutes, causing Mr. Matos to either asphyxiate or die of cardiac arrest. Plaintiffs' are unable to allege what exactly was the cause of death because they have been refused the coroner's report, even now two years after the death of Mr. Matos. To this day, Plaintiffs' are only in possession of a death certificate that lists the cause of death as "pending."

16.    Plaintiffs are informed, believe, and thereon allege that the County of Los Angeles, Sheriff's Department and Defendant McDonnell, were obligated to have appropriate procedures, policies, and training and how to interact with an individual when such an individual didn't present any threat of death or serious bodily injury to themselves or those around them. Had such training, policies, and procedures been implemented, Plaintiffs' believe the death of Mr. Matos would have been avoided.

17.    Plaintiffs are informed and believe that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and Defendant McDonnell, lacked the appropriate policies and procedures on how to effectuate an arrest without causing asphyxiation or death to the individual. Such policies include turning an individual on his side so he can breathe after he is handcuffed, such policies included not hogtieing his legs and leaving him in a prone position, so he is able to breathe sufficiently. Such policies and procedures were available to a reasonable police agency at the time and would have prevented the death of Mr. Matos.

18.    Plaintiffs' are informed and believe and upon such belief allege that Mr. Matos's demise came about as a result of Defendants Los Angeles County Sheriff's Department and McDonnell's lack of implementation of proper procedure and training.  Had the Defendants' been properly trained, and had

such training been properly implemented, Plaintiffs believe that this incident would not have occurred.

19.    Plaintiffs' are informed and believe and upon such belief allege that Defendant Villanueva failed to properly punish the sheriff's deputies involved in this incident, thus, ratifying the actions of the deputies involved in this accident.

20.    Plaintiffs' are informed and believe and upon such belief allege that prior to the death of Mr. Matos, Defendants' failed to ascertain whether Mr. Matos was a threat to himself or others.

21.    Plaintiffs' are informed and believe and upon such belief allege that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, McDonnell, and Villanueva lacked the appropriate procedures on de-escalating when they piled on Mr. Matos and at the time of piling their bodies on Mr. Matos.

22.    Plaintiffs' are informed and believe and upon such belief allege that Mr. Matos's demise came about as a result of Defendants Los Angeles County Sheriff's Department and McDonnell's lack of implementation of proper procedure and training.  Had the Defendants' been properly trained, and had such training been properly implemented, Plaintiffs' believe that this incident would have been avoided.

23.    Plaintiffs' are informed and believe and upon such belief allege that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, its officers, and employees failed to follow appropriate policies and procedures.

24.    Prior to piling on Mr. Matos which led to his death, Plaintiffs' are informed and believe and upon such belief allege that That defendants, its officers and employees did not attempt to ascertain whether Mr. Matos used or threatened anyone with a firearm or deadly weapon of any kind or did they give Mr. Matos a chance to fight for his life.

25.    Plaintiffs' are informed and believe and upon such belief allege that

Mr. Matos's demise came about as a result of Defendants Los Angeles County Sheriff's Department and McDonnell's lack of implementation of proper procedure and training. Had the Defendants' been properly trained, and had such training been properly implemented, Plaintiffs' believe that this incident would have been avoided.

26.    Prior to Mr. Matos's death and at the time of his death, Plaintiffs' are informed, believe and thereon allege Mr. Matos did not resist Defendant Los Angeles County Sheriff's Department, its officers and employees in any way.

27.    Plaintiffs' are informed and believe and upon such belief allege that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and McDonnell lacked the appropriate procedure, policy, and training on how to properly apprehend or detain an individual who did not resist Defendant Los Angeles County Sheriff's Department, its officers or employees in any way.

28.    Plaintiffs' are informed and believe and upon such belief allege that Mr. Matos's demise came as a result of Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and McDonnell's lack of implementation of proper procedure and training. Had Defendants' been properly trained and had such training been properly implemented, Plaintiffs' believe this incident would have been avoided.

29.    Plaintiffs' are informed and believe and upon such belief allege that County of Los Angeles, Los Angeles County Sheriff's Department, and McDonnell lacked the appropriate procedure, polices and training on how to properly render appropriate medical care to Mr. Matos, which may have saved his life after he was piled on.

30.    Plaintiffs' are informed and believe and upon such belief allege that Mr. Matos's demise came about as a result of Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and McDonnell's lack of

implementation of proper procedure and training.  Had the Defendants been properly trained, and had such training been properly implemented, Plaintiffs' believe that this incident would have been avoided.

31.   Plaintiffs' are informed, believe, and thereon allege that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, its officers, and employees, in the course of apprehending Mr. Matos, unnecessarily and unjustifiably used deadly force, causing his death.

32.   Plaintiffs' are informed and believe and upon such belief allege that Defendants County of Los Angeles, Los Angeles County Sheriff's Department, McDonnell lacked the appropriate procedure, policy, and training on when it was proper to use deadly force.

33.   Plaintiffs' are informed and believe and upon such belief allege that Mr. Matos's demise came about as a result of Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and McDonnell's lack of implementation of proper procedure and training. Had the Defendants' been properly trained, and had such training been properly implemented, Plaintiffs' believe that this incident would have been avoided.

34.   Defendant Los Angeles County Sheriff's Department, its officers and employees, conduct was intentional, unreasonable, reckless and in violation of Mr. Matos's rights.

35.   Plaintiff is informed, believes and thereon alleges that the force used by Defendant Los Angeles County Sheriff's Department, its officers and employees, was unjustified and excessive, and against the policies of Defendant in various manners, including keeping Mr. Matos in a prone position after he had been handcuffed, failing to turn him on his side and clear his airway so he can breathe.

36.   Mr. Matos was unarmed, had committed no crime (nor was he subsequently charged with a crime) and was not a threat to the safety of

Defendants, its officers or employees, or others.

37.     Plaintiff is informed and believes that Mr. Matos was not under the influence of alcohol, unprescribed medication or a controlled substance at the time of, or prior to his death.

38.     As a direct and proximate result of the aforementioned acts of Defendants, its officers and employees, and each of them, Mr. Matos suffered the following injuries and damages for which Plaintiffs' may recover:

     a.  Loss of the life of Mr. Matos including the value of his life;

     b.  Conscious physical pain, suffering and emotional trauma prior to and during his asphyxiation until he died;

     c.  Mr. Matos's medical bills including attempting to save his life;

     d.  The loss of economic support.

39.     As a direct and proximate result of the actions of Defendants, its officers and employees, and each of them Plaintiffs' have also suffered the following injuries, including but not limited to:

     a.  Loss of civil rights due to the loss of the relationship with Eduard Matos and with his mother and father, according to proof;

     b.  Loss of economic support to his minor children;

     c.  Loss of civil rights of minor Plaintiffs due to the death of their father, according to proof;

     d.  Funeral and burial expenses, according to proof.

40.     Defendants are liable through the application of respondeat superior pursuant to Government Code sections 815.2, 820 and 825 for the acts of its employees named herein who at all times alleged herein were acting within the course and scope of their employment with said public entities.

///

///

///

**FIRST CAUSE OF ACTION**

*Against All Defendants and DOES 1-100, for*

**VIOLATION OF FEDERAL CIVIL RIGHTS [42 U.S.C. §§ 1983, 1985, 1986, 1988]**

41.     Plaintiffs' repeat and re-alleges each and every allegation of the foregoing paragraphs 1 through 40 as though fully set forth hereinafter.

42.     This cause of action is to redress a deprivation, under color of authority, statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Mr. Matos by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

43.     Defendants, its officers and employees, and Does 1 through 100, and each of them, owed a duty of ordinary care to avoid harm to Mr. Matos.

44.     Plaintiffs' contend and herein allege that Defendants, its officers and employees, and Does 1 through 100, and each of them, breached these aforementioned duties, intentionally, in relation to all their interactions with Mr. Matos, on July 4, 2018, including, but not limited to, use of excessive and deadly force upon Mr. Matos while he was unarmed.

45.     Plaintiffs contend and herein allege that the aforementioned intentional breach of their duties by Defendants, its officers and employees, and Does 1 through 100, constituted violations of the civil rights of Mr. Matos, violation of 42 U.S.C. § 1983 of the Fourth and Fourteenth Amendments of the Constitution of the United States.  Plaintiff further contends and alleges that Defendants, its officers, and employees, and Does 1 through 100's disregard of Mr. Matos's aforementioned civil rights was done with either actual malice or deliberate indifference to Mr. Matos's civil rights.

46.     Plaintiffs contend and herein allege that Defendants, its officers, and employees, and Does 1 through 100 intentional use of excessive and deadly force upon Mr. Matos, who was unarmed, was the legal cause of Mr.

Matos's death on July 4, 2018.

47.    On July 4, 2018, Defendants, its officers and employees, and Does 1 through 100, and each of them, violated Mr. Matos's civil rights under the Fourth, Eighth and  Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person, cruel and unusual punishment, nor the deprivation of life and liberty and denial of due process of law. The violation was under color of State and Federal law. Defendants, its officers and employees, and Does 1 through 100, and each of them, acted in violation of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, when Mr. Matos was subjected to excessive force and killed by Defendant's officers and employees, as described herein.

48.    The use of excessive force upon Mr. Matos was a violation of his civil rights to be free from the unreasonable seizure of his person, the loss of his physical liberty interest, cruel or unusual punishment, and the denial of substantive due process under the Fourth, Eighth and Fourteenth Amendments of the United State Constitution.  In addition, in taking the aforesaid action, Defendants, its officers and employees, and Does 1 through 100, and each of them, violated Mr. Matos's civil rights, by being deliberately indifferent to his physical security.

49.    Defendants, its officers and employees, and Does 1 through 100, and each of their actions as aforesaid directly and proximately caused injuries and damages to Plaintiffs, as set forth herein.

50.    On July 4, 2018, Defendants, its officers, and employees, and Does 1 through 100, and each of them, violated Mr. Matos's and Plaintiff's Civil Rights by using a degree of physical coercion which was not objectively reasonable under the circumstances.   Mr. Matos, who was unarmed and potentially a physical injury, posed no threat to himself or any third persons, including the Defendants, and had committed no crime.  Defendants, its officers

and employees, and Does 1 through 100, use of excessive force was unreasonable and in violation of Mr. Matos and Plaintiffs' civil rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution to be free from an unreasonable seizure of his person, to be free from cruel or unusual punishment and to be free from a loss of physical liberty. Defendants, its officers and employees, and Does 1 through 100, and each of them, use of excessive force was in violation of Plaintiff's and Mr. Matos's Fourth, Eighth and Fourteenth Amendment Rights.

51.     Defendants, its officers, and employees, and Does 1 through 100 use of excessive force was unreasonable and in violation of Plaintiff's and Mr. Matos's civil rights and violated the Fourteenth Amendment to the United States Constitution as their actions were sadistic and malicious and did not further any legitimate legal purpose.

52.     Defendants' officers and employees, named as Does 1 through 100, are individually liable for the violation of Mr. Matos's and Plaintiffs' Civil Rights apart and aside from the customs, policies and practices of Defendant County of Los Angeles and Los Angeles County Sheriff's Department.

53.     As a direct and proximate result of the conduct of Defendants' officers and employees, named as Does 1 through 100, and each of them, Mr. Matos suffered the following injuries and damages for which Plaintiffs' may recover:

      a. Violation of Mr. Matos's Constitutional Rights under the Fourth, Eighth and  Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person, cruel and unusual punishment, nor the deprivation of life and liberty and denial of due process of law;

      b. Loss of life of Mr. Matos, including the value of his life;

      c. Conscious physical pain, suffering and emotional trauma during the

incident on July 4, 2018.

54.     As a direct and proximate result of the conduct of Defendant's officers and employees, named as Does 1 through 100, and each of them, Plaintiffs suffered the following injuries, including but not limited to:

      a. The violation of Plaintiff's civil rights caused by the death of their father, according to proof;

      b. The violation of Plaintiff's civil rights caused by the death of their son, according to proof;

      c. Loss of economic support from their father, Mr. Matos.

55.     The conduct of Defendants' officers and employees, named as Does 1 through 100, and each of them, was reckless and they acted with callous indifference to the federally protected rights of Mr. Matos and Plaintiffs. Defendants' officers and employees, named as Does 1 through 100, and each of them, engaged in despicable conduct by unreasonable and excessive force and were malicious and in reckless and conscious disregard for the rights and individual safety of Mr. Matos and Plaintiffs. As such, Plaintiffs are entitled to punitive damages in accord with constitutionally permitted limits to punish and make an example of the individual defendant officers and employees.

56.     Plaintiffs are entitled to an award of attorneys' fees, costs and expenses under 42 U.S.C. § 1988, as a result of Defendants' officers and employees, named as Does 1 through 100, inclusive, violation of Mr. Matos's Civil Rights.

## SECOND CAUSE OF ACTION

*Against All Defendants and DOES 1-100, for*

## VIOLATION OF FEDERAL CIVIL RIGHTS: MONELL CLAIM [42 U.S.C. §§ 1983, 1985, 1986, 1988]

57.     Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs 1 through 56 as though fully set forth hereinafter.

58.    At all times mentioned herein, Defendants maintained a custom, policy and practice to allow the violation of Civil Rights, including racial profiling of Mexican Americans and the use of excessive force upon Mexican Americans. All these actions were done in violation of Mr. Matos's and Plaintiffs' Civil Rights under Color of State Law and constituted a systematic custom, policy, practice and procedure instituted for denial of the Civil Rights of Plaintiff, Mr. Matos and others.

59.    Prior to July 4, 2018, Defendants, and Does 1 through 100, developed and maintained policies or customs for its officers and employees to adhere to which exhibit deliberate indifference to the Constitutional Rights of African Americans, which caused the violation of Mr. Matos's and Plaintiffs' civil rights.

60.    It was the policy and custom of Defendants, and Does 1 through 100, to inadequately supervise and train its officers in conducting seizures of Mexican Americans, including the failure to adequately supervise and train its officers and employees, thereby failing to adequately discourage further Constitutional violations on the part of its officers and employees.  Specifically, trained practices were to maintain individuals who have been handcuffed in a prone position without turning them of their side, so that they will be able to breathe and hog tying their legs, in a way to further prevent them from being able to breathe. Plaintiffs' allegations rather than utilize deadly force upon Mr. Matos, Defendants, and Does 1 through 100, its officers and employees, could have and should have utilized other methods of securing Mr. Matos, rather than the violent and deadly method it elected to do so on July 4, 2018. Instead of properly training its officers in utilization of non-deadly measures, Defendants trained its employees and officers to place weight on the back of an individual in a prone position who was hogtied at the legs, and prevented from being able to breathe.

61.    Plaintiffs' are aware that the policy to pile on the back of individuals in a prone position and prevent them from breathing was persistent and widespread throughout Defendants' sheriff's department, as there has been other high profile incidents of Defendant Los Angeles County Sheriff's Department, its officers, and employees causing the positional asphyxiation of individuals who have been handcuffed.

62.    As a result of the above-described policies and customs, officers and employees of Defendants, and Does 1 through 100, believed that their actions would not be properly monitored by supervising officers and that misconduct would not be investigated or sanctioned, and would be tolerated and accepted.

63.    The above-described policies and customs demonstrate a deliberate indifference on part of the policy makers of Defendants, and Does 1 through 100, to the constitutional rights of persons within their jurisdiction, and were the cause of violations of Plaintiffs' and Mr. Matos's civil rights as alleged herein.

64.    As a direct and proximate result of the conduct of Defendants, and Does 1 through 100, and each of them, Mr. Matos suffered the following injuries and damages for which Plaintiff may recover:

a. Violation of Mr. Matos's constitutional rights under the Fourth, Eighth and  Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of her person, cruel and unusual punishment, nor the deprivation of life and liberty and denial of due process of law;

b. Loss the life of their father, including the value of his life;

c. Conscious physical pain, suffering and emotional trauma during the incident;

d. Loss of the civil rights due to the loss of the relationship between

Mrs. Garcia, Mr. Matos, and their son.

65.   As a direct and proximate result of the actions of Defendants, and Does 1 through 100, and each of them, Plaintiffs' suffered the following injuries, including but not limited to:

    a.   Loss of the relationship due to the death of their father, Mr. Matos;

    b.   Loss of the relationship due to the death of their son, by Mrs. Garcia and Mr. Matos;

    c.   Loss of economic support from their father.

66.   The conduct of Defendant's officers and employees, named as Does 1 through 100, was reckless and they acted with callous indifference to the federally protected rights of Mr. Matos and Plaintiffs'. Defendants, its officers, and employees, and Does 1 through 100, and each of them, engaged in despicable conduct by using excessive force and were malicious in their reckless and conscious disregard for the rights and individual safety of Mr. Matos and the Plaintiffs'.

67.   Plaintiffs' are entitled to punitive damages in accord with statutorily permitted limits to punish and make an example of the individual defendant officers and employees.

68.   Plaintiffs' are entitled to an award of attorneys' fees, costs and expense under 42 U.S.C. section 1988 due to Defendant's officer's and employee's, named as Does 1 through 100, violations of Mr. Matos's and Plaintiffs' civil rights.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs' pray for judgment against Defendants as follows:

1.   General damages for loss of the life of Mr. Matos to himself including the value of his life in an amount according to proof at the time of trial;

2.     General damages for conscious physical pain, suffering and emotional trauma during the incident of July 4, 2018, through Mr. Matos's death in an amount according to proof at the time of trial;

3.     Violation of Plaintiffs' civil rights due to the loss of their relationship with their father;

4.     Violation of the civil rights of Mrs. Garcia and Mr. Matos, due to the loss of their relationship with their son;

5.     Loss of economic support from Mr. Matos in an amount according to proof at the time of trial;

6.     Funeral and burial expenses according to proof;

7.     Mr. Matos's medical bills incurred attempting to save his life;

8.     Punitive damages to punish and make an example of the Doe officers and employees, in an amount according to proof at the time of trial;

9.     For other general damages in an amount according the proof at trial;

10.    For other special damages in an amount according to proof at trial;

11.    For pre-judgment and post-judgment interest;

12.    For legal/attorney fees, expenses, and costs incurred in prosecution in the present action, to the extent provided by law;

13.    For injunctive relief; and

14.    For such other and further relief as the Court may deem just and proper.

///
///

Dated: July 2, 2020

Respectfully submitted,
ADAMSON AHDOOT LLP

B.

Federico C. Sayre, Esq.
Attorneys for Plaintiffs'

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs' hereby requests a jury trial on all issues triable to a jury in this matter.

Dated: July 2, 2020

Respectfully submitted,
ADAMSON AHDOOT LLP

By

Federico C. Sayre, Esq.
Attorneys for Plaintiffs'